IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Barbara L. Roberts,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,[1]<br>Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 4: 17-cv-00175-JED-GBC<br><br><br>(MAGISTRATE JUDGE COHN)<br><br>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S APPEAL AND TO REVERSE AND REMAND DECISION OF COMMISSIONER |

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S APPEAL AND TO REVERSE AND REMAND DECISION OF COMMISSIONER

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Barbara L. Roberts, ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **GRANT** Plaintiff's appeal and **REVERSE** and **REMAND** the Commissioner's decision in this case.

### I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.      Procedural History**

Plaintiff applied for Disability Insurance Benefits pursuant to Title II of the Act in February 2014, alleging disability since October 2012. (Tr. 11, 188-189, 215). In March 2016, Plaintiff appeared at an administrative hearing, and the ALJ rendered an unfavorable decision. (Tr. 11-21). On February 2, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 422.210(a). This action followed. Plaintiff was 51 years of age as of the date of the Commissioner's final decision. (Tr. 10).

//

//

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges four errors: (1) The ALJ's conclusion Plaintiff had no severe hearing loss is unsupported by substantial evidence; (2) the ALJ failed to fulfill her duty to develop the record fully and fairly; (3) the ALJ's credibility determination is unsupported by substantial evidence and legally flawed; and (4) the Commissioner failed to sustain her burden at step five. (Pl. Br. at 2, Doc. 12).

A.  **ALJ's Evaluation of the Medical Evidence**

   1.  **Opinions in the Record**

Plaintiff contends the ALJ failed to properly evaluate the medical opinions in the record, specifically from the consultative examiners, Johnson Gourd, M.D. and Sam Worrall, D.O., and the state agency physician, James Williams, M.D. (Pl. Br. at 2, 4). In support for the weight allocated to the medical opinions, the ALJ made the following observations prior to evaluating the Residual Functional Capacity ("RFC"):

> The claimant has the following severe impairments: a possible right rotator cuff tear …
>
> A review of the record also shows the claimant has alleged hearing loss, intermittent pain in the right arm, a hand injury, muscle spasm in the neck, worsening eyesight, and anxiety.
>
> Although the claimant alleged progressive hearing loss, I find that her complaints are not fully credible, and I find that her alleged hearing loss is not severe. The record shows that on March 31, 2014, she told consultative examiner Johnson Gourd, M.D. that she could not hear very well. Nevertheless, Dr. Gourd found that she was able to hear well enough at conversational levels and distance, even with an air-conditioning blower on, to follow instructions and answer questions. However, he did note a slight speech impediment. Dr. Gourd suggested that formal audiology testing was necessary to determine the claimant['s] level of hearing loss …
>
> [The ALJ] accord[s] great weight to the findings of Dr. Gourd because they are supported by his physical examination and are consistent with the record as a whole …

4

On August 5, 2014, the claimant presented to consultative examiner Sam Worrall, D.O. for evaluation for her auditory impairment. The claimant reported that her hearing had gradually been worsening for 15 years. She did not indicate any history of trauma or familial hearing loss. Dr. Worrall's examination was completed without difficulty. Her external auditory canals were patent bilaterally. Her tympanic membranes were seen and found to be intact and free of middle ear effusion or infection. Then the claimant was given auditory testing in a sound booth without amplification. The reported results of the testing revealed the tympanograms within normal limits in both ears. On the other hand, her otoacoustic emissions were considered abnormal bilaterally. Her speech recognition threshold on the left was 35dB and her speech recognition threshold on the right was 45dB. Her word recognition score on the left was 60% at 75 SL and her word recognition score on the right was 32% at 85 SL (2F).

While these findings appear to support Dr. Worrall's impression that she had mild sloping to profound hearing loss, Dr. Worrall states he does not believe the claimant gave her best effort during the testing. Not only are the test results of hearing loss inconsistent with the observation by Dr. Gourd, they are significantly inconsistent with my observations. Dr. Gourd specifically noted the claimant was able to hear well enough at conversational levels and distance, even with an air conditioning blower on, to follow instructions and answer questions. [The ALJ] take[s] notice of the fact that during the approximately 45-minute hearing, the claimant displayed extremely little difficulty hearing any of the question[s] and providing immediate responses. While she testified that [she] can hear the sound of people speaking, but cannot make out the words, she did not appear to be having any trouble hearing me and responding appropriately. Furthermore, during a routine examination, Justin Bryant, D.O. [observed] the claimant had no sensory deficits. There is nothing else in any of the claimant['s] other medical records to support her allegations of severe hearing loss. Therefore, [the ALJ] give[s] little weight to the audiology test results and find that the claimant['s] hearing loss is not severe …

Little weight is given to the opinions of the State agency medical consultant Karl K. Boatman, M.D., finding no severe impairments and to the opinion of James Williams, M.D. [from September 18, 2014] finding that the claimant's only limitation is the need to avoid even moderate exposure to noise …

Because the claimant's allegations of loss of hearing are not considered credible for the reasons explained above, the State agency opinion regarding noise appears contrary to evidence. The claimant was able to hear well enough at conversational levels and distance, even with an air conditioning blower on, to follow instructions and answer questions, and by my observation, she did not appear to be having any trouble hearing me and responding appropriately to my questions.

(Tr. 14-15, 18-19). From the record, the ALJ found Plaintiff had the RFC to perform:

5

> less than the full range of light work … Specifically, the claimant can lift and/or carry, push and/or pull, up to 20 pounds occasionally, lift and/or carry, push and/or pull, up to 10 pounds frequently. She can stand and/or walk up to 6 hours in an 8-hour workday with normal breaks and sit for up to 6 hours in an 8-hour workday with normal breaks. Additionally, she is limited to occasional left hand handling and occasional right overhead reaching.

(Tr. 16). The ALJ stated she formulated the RFC from consideration of all of the evidence.

### a. Dr. Gourd (Consultative Examining Physician)

The ALJ notes several times how Dr. Gourd observed Plaintiff could hear despite the presence of an air conditioning unit during the evaluation. (See Tr. 14, 19). Plaintiff states in her brief:

> The ALJ also considered the "opinions" of Dr. Gourd, issued on March 31, 2014, giving them "great" weight. (Tr. 18). Dr. Gourd did not issue an opinion as to Plaintiff's functional limitations and opined a formal audiology test was in order. (Tr. 267-271). Dr. Gourd noted Plaintiff's conversation with him was normal in his office. He did find Plaintiff to have a slight speech impediment. (Tr. 268). Plaintiff's left second digit had decreased range of motion on flexion. (Tr. 268). Dr. Gourd noted on mental examination that Plaintiff had limited insight. (Tr. 268).

(Pl. Br. at 2). Notwithstanding Dr. Gourd's observations regarding Plaintiff's hearing, he states "[f]ormal audiology testing would help determine any level of hearing loss." (Tr. 268). Thus, although the ALJ may cite Dr. Gourd's observations regarding Plaintiff's hearing during the exam, she could not rely on the observations to refute a subsequent audiology test, notably when the Dr. Gourd suggested the testing. Substantial evidence does not support the ALJ's finding to reject the audiology testing based solely on observations by Dr. Gourd.

### b. Dr. Worrall (Consultative Examining Physician)

The ALJ rejected the audiology test conducted by Dr. Worrall. (Tr. 14-15). Plaintiff states in her brief:

> The ALJ also stated without recitation to any portion of the record that Dr. Worrall found Plaintiff was not giving her best effort during an audiology test. (Tr. 14). Dr. Worrall's records are found at Tr. 274-276. Plaintiff is unable to identify any portion of Dr. Worrall's records indicating Plaintiff did not give her best effort.

> (Tr. 274-276). In fact, Dr. Worrall noted the examination was completed without difficulty. (Tr. 274). Dr. Worrall's examination confirmed DPOAEs were absent in both ears. (Tr. 275) … Dr. Worrall's examination also confirmed mild sloping to profound hearing loss in both ears. (Tr. 274-275).

(Pl. Br. at 4). Defendant conceded the ALJ "errantly stated" the unsupported inference Plaintiff did not put forth best efforts on audiology testing. (Def. Br. at 5) (Doc. 14). Dr. Worrall concluded in his report: "Examination was completed without difficulty" and "Mild Sloping to Profound Hearing Loss in both ears." (Tr. 274-75). Notwithstanding Dr. Worrall's findings, the ALJ rejects the testing, observing Plaintiff could hear at the administrative hearing. (Tr. 14-15). However, as Plaintiff and Defendant both note, credibility judgments are not a proper basis for rejecting a medical opinion. (Pl. Br. at 3) (Def. Br. at 5). See McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) and Sagi v. Colvin, 2016 WL 1267170, at *3 (N.D. Okla. 2016) (unpublished).[2]

As McGoffin states:

> In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Although we may not second-guess an ALJ's credibility judgments, such judgment by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record." Id. at 318.

McGoffin, 288 F.3d at 1252. Thus, the ALJ needed to cite an alternative medical opinion to refute the audiology testing, rather than putting forth her lay opinion or discounting Plaintiff's credibility. Substantial evidence does not support the ALJ's finding to reject the auditory testing based on casual observations.

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

### c. Dr. Williams (State Agency Reviewing Physician)

Plaintiff contends the ALJ erred by giving "little weight" to the opinion of Dr. Williams, who concluded as to Plaintiff's environmental limitation for noise she should: "Avoid even moderate exposure." (Pl. Br. at 4) (citing Tr. 81). The ALJ rejected this limitation finding Plaintiff had no "severe" hearing impairment at Step Two.[3] As stated above, the ALJ needed to cite an alternative medical opinion to refute the audiology testing, rather than citing her lay opinion or discounting Plaintiff's credibility. Thus, substantial evidence does not support the ALJ's finding to reject Dr. William's opinion regarding the environmental noise limitation.

### B. Other Allegations of Error

Plaintiff's additional claims of error, including allegations regarding treatment of Plaintiff's credibility, may be remedied through the case's treatment on remand. Thus, the Court declines to address those claims. Accord Williams v. Colvin, No. CIV-13-448-R, 2014 WL 2949470, at *4 (W.D. Okla. June 27, 2014). See, e.g., Wade v. Astrue, 268 F. App'x 704, 706–07 (10th Cir. 2008).

Accordingly, the ALJ's decision lacks substantial evidence a reasonable mind might accept as adequate to support the conclusion.

### RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **GRANT** Plaintiff's appeal and **REVERSE** and **REMAND** the Commissioner's decision in this case.

---

[3] Defendant cites "an ALJ's RFC assessment may not be based on any particular medical or non-medical opinion, but must be based on "all of the relevant medical evidence and other evidence. 20 C.F.R. § 404.1545(a)(3)." (Def. Br. at 4). While this is true, determining whether Plaintiff's hearing loss is a "severe" impairment is a preliminary step prior to determining the RFC. 20 C.F.R. §§ 404.1520, 416.920.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than July 17, 2018.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on July 3, 2018.

_____
**Gerald B. Cohn
United States Magistrate Judge**